**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOE HAND PROMOTIONS, INC.,** | : | Civil No. 4:13-CV-1022 |
| | : | |
| Plaintiff, | : | ( Judge Brann) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| **ANTHONY R. SANUTTI, d/b/a** | : | |
| **THE BRASS KEY,** | : | |
| | : | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

**I.     Statement of Facts and of the Case**

This case is an action brought under the Communications Act of 1934, 47 U.S.C. §605, *et seq.*, by Joe Hand Promotions, Inc., an international commercial distributor of paid sports and entertainment programming, to recover damages from Anthony Sanutti, the owner-operator of the Brass Key, a bar in Sunbury, Pennsylvania, as a result of Sanutti's unlicensed and unauthorized interception and display of pay-per-view programming at the Brass Key on April 22, 2012.  With respect to this incident, the pertinent facts can be simply stated:

Shortly after midnight on April 22, 2012, a private investigator named Robert Taylor, entered the Brass Key Bar. Ordering a $3.00 beer from Amy, the bartender,

Taylor surveilled the bar for approximately 45 minutes looking for any evidence of the unlawful, unlicensed depiction of pay-per-view sporting events promoted by Joe Hand Promotions. Specifically, Taylor was investigating the alleged pirated display of a UFC championship fight at the Brass Key. (Doc. 7-3.)

While conducting this surveillance in the Brass Key Bar, Taylor observed five televisions mounted at various locations throughout the bar. These televisions were showing the UFC fight which Joe Hand Promotions had offered on a pay-per-view basis. (Id.) During the 45 minutes that Private Investigator Taylor conducted his surveillance at the bar, he counted the number of patrons drawn to the bar on three separate occasions, and determined that between 53 and 21 persons patronized the bar while the Brass Key displayed this prize fight. (Id.) Neither Sanutti, nor the Brass Key, had been licensed by Joe Hand Promotions, Inc., to commercially display this fight. The commercial licensing fee for this particular event was $1,200. (Doc. 7-1, p. 20.)

On these facts, Joe Hand Promotions, Inc., brought this action on April 18, 2013, alleging that Sanutti, doing business as the Brass Key, violated the Communications Act of 1934, 47 U.S.C. §605, the Cable and Television Consumer Protection and Competition Act of 1992, 47 U.S.C. §553, and had committed the common law tort of conversion. (Doc. 1.) This complaint was served on the defendant on July 5, 2013, (Doc. 4), but Sanutti neglected to answer this complaint. Accordingly,

a default was entered against the defendant on August 14, 2013. (Doc. 6.)

On October 3, 2013, Joe Hand Promotions, Inc., filed a motion for entry of default judgment, which requested that the court consider entering a judgment in favor of the plaintiff for statutory and enhanced damages under 47 U.S.C. §605, and for common law conversion, in a total amount of $111,200. (Doc. 7.)[1] Following a conference with counsel in which Joe Hand Promotions, Inc., declined an opportunity to present further evidence in support of its motion for default judgment, it was agreed that the court would decide this matter on the pleadings. (Doc. 8.) Sanutti has not responded to this motion. Therefore, this matter is ripe for resolution.

Having reviewed the plaintiff's motion, for the reasons set forth below, it is

---

[1] Joe Hand Promotion's motion for entry of default judgment abandoned any claim for damages under the Cable and Television Consumer Protection and Competition Act of 1992, 47 U.S.C. §553. Joe Hand prudently abandons this prayer for damages since courts have held that section 553 and 605 are mutually exclusive, so a party may not recover under both for a single act of piracy. TKR Cable Co. v. Cable City Corp. 267 F.3d 196, 207 (3d Cir.2001) (finding provisions to be mutually exclusive); Joe Hand Promotions, Inc. v. Krist, 12–CV–1877, 2013 WL 3756439, *1 (W.D.Pa. July 15, 2013) ("When a defendant is liable under both § 553 and § 605, the aggrieved plaintiff may only recover damages under one of the sections but not both."); J & J Sports Productions, Inc. v. 4326 Kurz, Ltd. 07–CV–3850, 2008 WL 4630508, *3 (Oct. 17, 2008) ("the Third Circuit has stated that plaintiffs may not recover under both § 605 and § 553 because they apply to different signal types"). Joe Hand Promotions, Inc. v. Becchetti, 12-CV-1242, 2013 WL 4520638 (M.D. Pa. Aug. 26, 2013)

recommended that the court enter judgment in favor of the plaintiff in the total amount of $5,270.00.

## II. Discussion

### A. Calculation of Damages Under the Communication Act of 1934, 47 U.S.C. §605

Section 605(a) of Title 47 United States Code, prohibits the unauthorized interception and dissemination of certain communications and provides that:

> Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such

> communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

Private parties, like Joe Hand Promotions, Inc., that are allegedly aggrieved by an unauthorized interception and display of programming may bring an action for damages in federal court and, if they prevail:

> **(C)(i)** Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses;
>
> **(I)** the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or
>
> **(II)** the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.
>
> **(ii)** In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than

$100,000 for each violation of subsection (a) of this section.

47 U.S.C. § 605 (e)(3)(C).

In addition, by its terms "47 U.S.C. § 605(e)(3)(B)(iii), [provides that] a court 'shall direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails'" J & J Sports Prods., Inc. v. Kraynak, 3:10CV2486, 2013 WL 228962 (M.D. Pa. Jan. 22, 2013). Therefore, "[t]he plain wording of the statute allows plaintiff to recover its full costs and reasonable attorney's fees." Id.

With respect to claims for damages under §605, it is well-settled that: "'The specific amount of statutory damages assessed pursuant to Section 605 rests within the sound discretion of the court' Walsh, 540 F.Supp.2d at 560; (citing DIRECTV v. Haskell, 344 F.Supp.2d 761, 763–64 (D.Me.2004))." J & J Sports Prods., Inc. v. Kraynak, 3:10CV2486, 2013 WL 228962 (M.D. Pa. Jan. 22, 2013). The exercise of this discretion is guided, however, by certain basic principles. Thus, when calculating basic statutory damages under §605(e)(3(C)(i)(II): "Courts have used several methods to decide the amount when awarding non-enhanced statutory damages. First, the courts have used a base rate card method, in which the courts have awarded the cost of the appropriate licensing fee proportional to the size of the business had the business legally aired the program. Joe Hand Promotions, Inc. v. Krist, 2012 WL 6628934, at

*2 (W.D.Pa. Dec.19, 2012) (awarding the statutory minimum of $1,000 for a rate card fee of $900). Second, some courts have merely awarded a flat statutory damage without a mathematical calculation. See, e.g., J & J Sports Prods., Inc. v. Papania, 2010 WL 1191807 (W.D.La. Mar.26, 2010); King Vision Pay Per–View. Ltd. v. Lavorico, 2010 WL 796929, at *4–5 (E.D.Cal. Mar.5, 2010) (respectively, the courts awarded the maximum of $10,000 and the minimum of $1,000 in statutory damages for different cases without offering explanations or calculations for either). Thirdly, some courts have multiplied the number of patrons present during the illegal broadcast by the residential charge to legally watch the broadcast. See Garden City Boxing Club v. Rosado, 2005 WL 3018704, at *3–4 (E.D.N.Y. Oct.6, 2005)." Joe Hand Promotions, Inc. v. Krist, 2:12-CV-01877, 2013 WL 3756439 (W.D. Pa. July 15, 2013).

Similar discretion applies to the calculation of enhanced damages under §605(e)(3)(C)(ii) for displays of pirated programming undertaken willfully and for purposes of direct or indirect commercial advantage or private financial gain. In this setting: "The Court weighs a variety of factors to determine the award for enhanced statutory damages: '(1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) significant actual damages to plaintiff; (4) defendant's advertising for the intended broadcast of the event; (5) defendant's

7

charging a cover charge or charging premiums for food and drinks.' Kingvision Pay–Per–View, Ltd. v. Recio, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003) (internal citations omitted)." Joe Hand Promotions, Inc. v. Krist, 2:12-CV-01877, 2013 WL 3756439 (W.D. Pa. July 15, 2013).

Courts also recognize that this statutory damages system is designed, in part, to "to deter piracy [and] United States District Courts within the Third Judicial Circuit have approved the award of statutory damages in excess of actual damages for the purpose of deterrence. Kingvision Pay–Per–View, LTD. v. Lardo, 2:10–CV–0059, 2010 WL 3463316 at *3 (W.D.Pa. Sept.1, 2010); J & J Sports Prods., Inc. v. Gallegos, No. 2:08–CV–0201, 2008 WL 3193157 at *4 (D.N.J. Aug.5, 2008); Comcast Cable Co. v. Bowers, No. 2:06–CV–1664, 2007 WL 1557510 at *4–5 (D.N.J. May 25, 2007)." J & J Sports Prods., Inc. v. Kraynak, 3:10CV2486, 2013 WL 228962 (M.D. Pa. Jan. 22, 2013). Recognizing, however, that such deterrent punitive damages should bear a rational relationship to the basic statutory penalties imposed by the court, this court has typically limited these damages, whether characterized as statutory or enhanced damages, to an amount three times the base statutory damages imposed by the court. See e.g., Joe Hand Promotions, Inc. v. Becchetti, 12-CV-1242, 2013 WL 4520638 (M.D. Pa. Aug. 26, 2013)(treble damages); J & J Sports Prods., Inc. v. Kraynak, 3:10CV2486, 2013 WL 228962 (M.D. Pa. Jan. 22, 2013)(treble

damages);DIRECTV, Inc. v. Cibulka, 1:11-CV-00231, 2011 WL 3273058 (M.D. Pa. July 29, 2011)(treble damages). In practice, the aggregate amount of these damages has typically ranged between $3,000 and $10,000 in cases of this type brought before this court. See e.g., Joe Hand Promotions, Inc. v. Becchetti, 12-CV-1242, 2013 WL 4520638 (M.D. Pa. Aug. 26, 2013)($3,300 in damages, $500 in costs and fees); J & J Sports Prods., Inc. v. Kraynak, 3:10CV2486, 2013 WL 228962 (M.D. Pa. Jan. 22, 2013)("the court concludes a statutory damage award of $6,600 is appropriate under the circumstances."); DIRECTV, Inc. v. Cibulka, 1:11-CV-00231, 2011 WL 3273058 (M.D. Pa. July 29, 2011)($10,000 in damages, $2,225 in costs and fees.)

**B.     Calculation of Damages in this Case**

Guided by these benchmarks, we recommend that the court enter judgment in the following amounts in this case:

First, with respect to the amount of basic statutory damages, consistent with the practice of those "courts [which] have awarded the cost of the appropriate licensing fee proportional to the size of the business had the business legally aired the program[] Joe Hand Promotions, Inc. v. Krist, 2012 WL 6628934, at *2 (W.D.Pa. Dec.19, 2012)," Joe Hand Promotions, Inc. v. Krist, 2:12-CV-01877, 2013 WL 3756439 (W.D. Pa. July 15, 2013), we recommend that the basic statutory damage award in this case pursuant to §605(e)(3(C)(i)(II) be set at $1,200, the amount which the plaintiff

9

has represented would have been the commercial licensing fee for this programming.

Second, recognizing that the conduct here appears to have involved a display of pirated programming willfully and for purposes of direct or indirect commercial advantage or private financial gain, we conclude that the imposition of enhanced damages under §605(e)(3)(C)(ii) is appropriate, but the amount of those damages, should be limited to an amount three times the base statutory damages imposed by the court, or an additional $3,600. See e.g., Joe Hand Promotions, Inc. v. Becchetti, 12-CV-1242, 2013 WL 4520638 (M.D. Pa. Aug. 26, 2013)(treble damages); J & J Sports Prods., Inc. v. Kraynak, 3:10CV2486, 2013 WL 228962 (M.D. Pa. Jan. 22, 2013)(treble damages);DIRECTV, Inc. v. Cibulka, 1:11-CV-00231, 2011 WL 3273058 (M.D. Pa. July 29, 2011)(treble damages).

Furthermore, by its terms "47 U.S.C. § 605(e)(3)(B)(iii), [provides that] a court 'shall direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails'" J & J Sports Prods., Inc. v. Kraynak, 3:10CV2486, 2013 WL 228962 (M.D. Pa. Jan. 22, 2013). In this case, Joe Hand Promotions, Inc., has not provided us with any measure of its attorney's fees, however, the record reveals costs of $470, consisting of a filing fee of $350 (Doc. 1), and service costs of $120. (Doc. 4.) Since the statute provides for recovery of "full costs" the judgment in this case should also include these confirmed costs.

Finally, Joe Hand seeks $1,200 in damages for the common law tort of conversion. We note, however, that "courts have [frequently] refused to award conversion damages in conjunction with § 605 claims because those damages 'would not exceed those under §§ 553 and 605 and would result in double recovery.' Kingsvision Pay–Per–View, LTD. v. Lardo, 10–CV–0059, 2010 WL 3463316, *5 (W.D.Pa. Sept.1, 2010); see also Joe Hand Promotions, Inc. v. Hanaro Bethesda, Inc., 11–CV–191, 2012 WL 2366378, *7 (D.Md. June 20, 2012); Joe Hand Promotions v. Elmore, 11–CV–3761, 2013 WL 2352855, *10 (E.D.N.Y. May 29, 2013); Times Warner Cable of New York City v. Fland, 97–CV–7197, 1999 WL 1489144, *5 (S.D.N.Y. Dec.3, 1999); J & J Sports Productions, Inc. v. Moody, 08–CV–1515749, 2009 WL 1515749, *2 (E.D.Pa. May 28, 2009)." Joe Hand Promotions, Inc. v. Becchetti, 12-CV-1242, 2013 WL 4520638 (M.D. Pa. Aug. 26, 2013). In light of the fact that our recommended statutory damage award is set in the precise amount of the plaintiff's common law conversion claim, a separate recovery under that common law claim would, in our view, result in a double recovery. Therefore, the court should decline to make such an award as part of this judgment.

### III. Recommendation

For the reasons set forth above, it is RECOMMENDED that the Court award a default judgment in the amount of the following costs and damages in this case:

| | |
|---|---|
| Costs: | $ 470.00 |
| Statutory damages pursuant to §605(e)(3(C)(i)(II) | $ 1,200.00 |
| Enhanced damages under §605(e)(3)(C)(ii) | $ 3,600.00 |
| TOTAL | $ 5,270.00 |

The Parties are placed on notice that pursuant to Local Rule 72.3:

  Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of January, 2014.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge